# PERKINSCOIE

700 13th Street, NW
Suite 800
Washington, D.C. 20005-3960

T  +1.202.654.6200
F  +1.202.654.6211
PerkinsCoie.com

April 26, 2023

Dan L. Bagatell
DBagatell@perkinscoie.com
D.  +1.602.351.8250
F.  +1.602.648.7150

FILED VIA CM/ECF

Colonel Peter R. Marksteiner
Clerk/Circuit Executive
United States Court of Appeals for the Federal Circuit
717 Madison Place, N.W., Room 401
Washington, D.C. 20439

### *Sonos, Inc. v. ITC*, Nos. 2022–1421 & 2022–1573 (not yet calendared):

### Notice of Supplemental Authority Regarding Argument I of Sonos's Appeal

Dear Colonel Marksteiner:

Google notifies the Court regarding new authority pertinent to Argument I of Sonos's appeal: *Salazar v. AT&T Mobility LLC*, No. 2021-2320, ___ F.4th ____, 2023 WL 2778774 (Fed. Cir. Apr. 5, 2023).

The claims in *Salazar* recited "a microprocessor" capable of performing multiple functions. The Court categorized this as "language that introduces a claim element using an indefinite article and further defines the element with subsequently recited functionality." 2023 WL 2778774, at *5 (citing *In re Varma*, 816 F.3d 1352, 1362-63 (Fed. Cir. 2016)). Salazar argued that the claims covered systems in which the claimed functions were distributed across multiple microprocessors. AT&T argued that the claims required at least one microprocessor that could perform all the recited functions by itself. The Court agreed with AT&T and held that the claims required "at least one microprocessor capable of performing each of the recited functions." *Id.* The Court invoked *Varma*'s analogy that "for a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice that he have two dogs, each able to perform just one of the tasks." *Id.*

April 26, 2023
Page 2

*Salazar* confirms that the Commission correctly construed the "second message" of '896 claim 1. As in *Salazar*, claim 1 uses an indefinite article to introduce a claim limitation with specified functionality: "a second message" must contain network configuration parameters comprising a network identifier and a security key. As in *Salazar*, the claim language requires at least one second message that contains each of the recited network configuration parameters. As a result, '896 NIA 2 does not infringe.

The fact that '896 claim 1 recites that "at least a second message" must contain the two parameters does not change the analysis. As explained in Google's principal brief (at 61-62), that phrasing simply reinforces that two or more messages may each contain both parameters. In *Salazar/Varma* terms, if you hear that a new neighbor has "at least a dog that rolls over and fetches sticks," you should expect to encounter at least one dog that can perform both tasks, not one that rolls over and another that fetches sticks.

Respectfully submitted,

/s/Dan L. Bagatell
Dan L. Bagatell

Counsel for Google LLC

Copy by CM/ECF to all counsel of record

Attachment

Certificate of Compliance

I certify that the body of this letter contains 350 words, within the limit set by Federal Rule of Appellate Procedure 28(j).

Dated: April 26, 2023                    /s/Dan L. Bagatell
                                          Dan L. Bagatell

Perkins Coie LLP

2023 WL 2778774
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

Joe A. SALAZAR, Plaintiff-Appellant
v.
AT&T MOBILITY LLC, Sprint United Management
Company, T-Mobile USA, Inc., Cellco Partnership Inc.,
dba Verizon Wireless, Inc., Defendants-Cross-Appellants
HTC Corporation, HTC America, Inc., Defendants

2021-2320, 2021-2376
|
Decided: April 5, 2023

**Synopsis**
**Background:** Owner of patent describing technology for
wireless and wired communications filed infringement suit
against alleged infringer. The United States District Court for
the Eastern District of Texas, J. Rodney Gilstrap, Chief Judge,
2020 WL 5608640, construed patent claim terms and entered
final judgment reflecting jury's verdict that patent was not
infringed and was not invalid. Parties cross-appealed.

**Holdings:** The Court of Appeals, Stoll, Circuit Judge, held
that:

[1] patent claim term was correctly construed, and

[2] alleged infringer waived appellate argument regarding
anticipation.

Affirmed.

**Procedural Posture(s):** On Appeal; Judgment.

West Headnotes (11)

**[1]** **Patents** ⟜ Construction and Operation of
Patents

    291  Patents
    291VII  Patent Infringement
    291VII(C)  Actions
    291VII(C)7  Appellate Review
    291k1965  Scope, Standard, and Extent of Review

    291k1970  Particular Matters
    291k1970(12)  Construction and Operation of
Patents
    291k1970(13)  In general
Court of Appeals reviews a district court's patent
claim construction de novo where it is decided
only on the intrinsic evidence.

**[2]** **Patents** ⟜ Language of claims in general

    291  Patents
    291V  Construction and Operation of Patents
    291V(A)  In General
    291k1314  Claims and Limitations;  Language of
Patent
    291k1316  Language of claims in general
In construing a patent claim, Court of Appeals
begins with the claim language itself.

**[3]** **Patents** ⟜ Plain, ordinary, or customary
meaning in general

**Patents** ⟜ State of the art

    291  Patents
    291V  Construction and Operation of Patents
    291V(A)  In General
    291k1314  Claims and Limitations;  Language of
Patent
    291k1317  Plain, ordinary, or customary meaning
in general
    291  Patents
    291V  Construction and Operation of Patents
    291V(A)  In General
    291k1341  State of the art
The words of a patent claim are generally given
their ordinary meaning, which is the meaning
that the term would have to a person of ordinary
skill in the art in question at the time of the
invention.

**[4]** **Patents** ⟜ Language of claims in general

**Patents** ⟜ Transitional phrases;  open-ended
claims

    291  Patents
    291V  Construction and Operation of Patents
    291V(A)  In General
    291k1314  Claims and Limitations;  Language of
Patent
    291k1316  Language of claims in general

291  Patents
291V  Construction and Operation of Patents
291V(A)  In General
291k1314  Claims and Limitations;  Language of Patent
291k1321  Transitional phrases;  open-ended claims

In construing patent claim terms, the indefinite article "a" means "one or more" in open-ended claims containing the transitional phrase "comprising."

**[5]   Patents**  👉 Language of claims in general

291  Patents
291V  Construction and Operation of Patents
291V(A)  In General
291k1314  Claims and Limitations;  Language of Patent
291k1316  Language of claims in general

In construing patent claims, an exception to the general rule that "a" means more than one only arises where the language of the patent claims themselves, the specification, or the prosecution history necessitate a departure from the rule.

**[6]   Patents**  👉 Language of claims in general

291  Patents
291V  Construction and Operation of Patents
291V(A)  In General
291k1314  Claims and Limitations;  Language of Patent
291k1316  Language of claims in general

In construing patent claims, the use of the term "said" indicates that this portion of the claim limitation is a reference back to the previously claimed term.

**[7]   Patents**  👉 Language of claims in general

291  Patents
291V  Construction and Operation of Patents
291V(A)  In General
291k1314  Claims and Limitations;  Language of Patent
291k1316  Language of claims in general

In construing patent claim terms, the subsequent use of the definite article "said" in a claim to refer back to the same claim term does not change the

general plural rule that "a" means more than one, but simply reinvokes that non-singular meaning.

**[8]   Patents**  👉 Radio and telecommunications equipment

291  Patents
291V  Construction and Operation of Patents
291V(C)  Particular Fields of Invention
291k1398  Electricity and Electronics
291k1401  Radio and telecommunications equipment

"A microprocessor for generating, said microprocessor creating, a plurality of parameter sets retrieved by said microprocessor, said microprocessor generating," in patent describing technology for wireless and wired communications, meant one or more microprocessors, at least one of which was configured to perform the generating, creating, retrieving, and generating functions.

**[9]   Federal Courts**  👉 Taking case or question from jury;  judgment as a matter of law

170B  Federal Courts
170BXVII  Courts of Appeals
170BXVII(D)  Presentation and Reservation in Lower Court of Grounds of Review
170BXVII(D)2  Particular Grounds of Review
170Bk3406  Matters of Procedure
170Bk3419  Taking case or question from jury;  judgment as a matter of law

A party must make proper motions for judgment as a matter of law in order to appeal an adverse verdict on grounds relating to the sufficiency of the evidence. Fed. R. Civ. P. 50.

**[10]   Patents**  👉 Presentation and Reservation in Lower Court of Grounds of Review

291  Patents
291VII  Patent Infringement
291VII(C)  Actions
291VII(C)7  Appellate Review
291k1956  Presentation and Reservation in Lower Court of Grounds of Review
291k1957  In general

Alleged infringer waived its appellate argument that claims of patent describing technology

for wireless and wired communications were anticipated by prior art, where alleged infringer failed to move for judgment as matter of law regarding any invalidity ground, including anticipation, at conclusion of trial, and instead clearly disavowed any intention to move for judgment as matter of law regarding anticipation. Fed. R. Civ. P. 50(a).

**[11]    Patents** 👉 In general; utility

> 291    Patents
> 291X    Patents Enumerated
> 291k2091    In general; utility
> US Patent 5,802,467. Construed and Not Invalid and Not Infringed.

Appeals from the United States District Court for the Eastern District of Texas in No. 2:20-cv-00004-JRG, Chief Judge J. Rodney Gilstrap.

**Attorneys and Law Firms**

Dariush Keyhani, Keyhani LLC, Washington, DC, argued for plaintiff-appellant.

Todd Eric Landis, Williams Simons & Landis PLLC, Dallas, TX, argued for defendants-cross-appellants. Also represented by Fred Williams, Austin, TX; John Wittenzellner, Philadelphia, PA.

Before Stoll, Schall, and Stark, Circuit Judges.

**Opinion**

Stoll, Circuit Judge.

 **\*1**    Joe Salazar appeals the United States District Court for the Eastern District of Texas's judgment of noninfringement, challenging the court's claim construction. Mr. Salazar contends that the court erroneously construed "a microprocessor" to mean one microprocessor, contrary to this court's precedent. AT&T Mobility LLC, Sprint United Management Company, T-Mobile USA, Inc., and Cellco Partnership Inc., dba Verizon Wireless, Inc. (collectively, "AT&T") cross-appeal the district court's ruling that Mr. Salazar's claims were not precluded based on prior litigation and challenge the judgment that the asserted claims are

not invalid as anticipated. Because we agree with the district court's claim construction, we affirm the judgment of noninfringement. Having affirmed the judgment of noninfringement, we do not reach AT&T's preclusion arguments. Finally, we hold that AT&T waived its challenge to the jury's verdict on anticipation by failing to move for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure.

BACKGROUND

Mr. Salazar owns U.S. Patent No. 5,802,467. The '467 patent describes technology for wireless and wired communications, including command, control, and sensing for two-way communication of sound, voice, and data "with any appliance and/or apparatus capable of transmitting and/or receiving compatible sound, voice and data signals." '467 patent col. 1 ll. 8–13. The '467 patent expired on September 28, 2015.

Independent claim 1, one of several claims that contain the terms at issue, recites:

> 1. A communications, command, control and sensing system for communicating with a plurality of external devices comprising:
>
> *a microprocessor for generating* a plurality of control signals used to operate said system, *said microprocessor creating* a plurality of reprogrammable communication protocols, for transmission to said external devices wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices;
>
> a memory device coupled to said microprocessor configured to store a plurality of parameter sets *retrieved by said microprocessor* so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets;
>
> a user interface coupled to said microprocessor for sending a plurality of signals corresponding to user selections to said microprocessor and displaying a plurality of menu selections available for the user's choice, *said microprocessor generating* a communication protocol in response to said user selections; and

an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols.

*Id.* at col. 25 l. 57–col. 26 l. 17 (emphasis added).

In 2016, Mr. Salazar sued HTC Corp., alleging HTC Corp. infringed the ’467 patent by selling certain HTC One phones that allegedly embodied the asserted claims. *See* Compl., *Salazar v. HTC Corp.*, No. 2:16-cv-01096, 2016 WL 11577368 (E.D. Tex. Oct. 5, 2016) ("*Salazar I*"). HTC Corp. raised two defenses: (1) that it did not commit any infringing acts in the United States; and (2) in any event, the accused phones did not infringe. *See Salazar I* Trial Tr. 21:21–22:2. A jury ultimately returned a verdict finding HTC Corp. did not infringe the ’467 patent. The jury did not decide whether the ’467 patent was valid, however, instead leaving that portion of the verdict form blank. J.A. 2201.

**\*2** In 2019, Mr. Salazar sued AT&T, again asserting the ’467 patent against the same products he challenged in *Salazar I*. HTC Corp. and HTC America, Inc. (collectively "HTC") intervened, requesting a declaratory judgment that the accused products did not infringe. The district court severed HTC's claims and stayed that portion of the case.

At claim construction, the parties disputed limitations present in multiple asserted claims, which required: "a microprocessor for generating ..., said microprocessor creating ..., a plurality of parameter sets retrieved by said microprocessor ..., [and] said microprocessor generating ...." The district court characterized the dispute between the parties as coming down to "whether the claims require one microprocessor that is capable of performing the recited 'generating,' 'creating,' 'retrieving,' and 'generating' functions." *Salazar v. AT&T Mobility LLC*, No. 2:20-cv-00004, 2020 WL 5608640, at \*17 (E.D. Tex. Sept. 18, 2020) (*Claim Construction Op.*). The district court answered this question in the affirmative and construed the term to mean "one or more microprocessors, at least one of which is configured to perform the generating, creating, retrieving, and generating functions." *Id.* at \*19. Relying in part on our decisions in *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313 (Fed. Cir. 2016), and *In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016), the district court explained that the claim term provided certain functions that the "said microprocessor" must be "necessarily configured

to perform as well as the structural relationship between 'said microprocessor' and other structural elements." *Claim Construction Op.*, 2020 WL 5608640, at \*19. Thus, the district court reasoned, "at least one microprocessor must satisfy all the functional (and relational) limitations recited for 'said microprocessor.'" *Id.* at \*18.

Prior to trial, AT&T moved for summary judgment, arguing that Mr. Salazar's claims were barred under claim preclusion and the Supreme Court's decision in *Kessler v. Eldred*, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907), which prevents harassment of customers of an adjudged noninfringer in specific circumstances. The district court denied that motion.

At trial, AT&T's technical expert opined that the asserted claims were anticipated by Goldstein, a prior art reference that was not considered by the U.S. Patent Office during prosecution. J.A. 1256–92 (Trial Tr. 91:18–127:7). At the conclusion of trial, AT&T moved for judgment as a matter of law under Federal Rule of Civil Procedure 50 regarding "infringement, damages, and preclusion," but not regarding invalidity. J.A. 1572 (Trial Tr. 198:16–19). The district court confirmed with AT&T's counsel that it was not moving for judgment as a matter of law regarding anticipation. *Id.* (Trial Tr. 198:20–22). The jury thereafter returned its verdict, finding that the accused products did not infringe the ’467 patent and that the patent was not invalid. J.A. 397–98. The district court entered final judgment reflecting the jury's verdict.

Mr. Salazar and AT&T both appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We start by addressing Mr. Salazar's challenge to the district court's claim construction. We then turn to AT&T's cross-appeal, in which it argues that the district court erred both by (1) denying AT&T's motion for summary judgment that Mr. Salazar's claims were barred by collateral estoppel and the *Kessler* doctrine and (2) finding that claims 1–7, 27–30, and 34 were not anticipated.

### I

**\*3** On appeal, Mr. Salazar argues that he is entitled to a new jury trial because the court erred in construing

"a" microprocessor and "said" microprocessor. Appellant's Br. 39. According to Mr. Salazar, the court should have interpreted the claim terms to require one or more microprocessors, any one of which may be capable of performing each of the "generating," "creating," and "retrieving" functions recited in the claims. *Id.* at 11–12, 32–33. Put another way, in Mr. Salazar's view, a correct claim construction would encompass one microprocessor capable of performing one claimed function and another microprocessor capable of performing a different claimed function, even if no one microprocessor could perform all of the recited functions. Mr. Salazar maintains that the district court erred by interpreting "a" microprocessor as a single microprocessor that is capable of performing all of the later recited "generating," "creating," and "retrieving" functions. *Id.* at 31.

 **[1]** **[2]** **[3]** We review a district court's claim construction de novo where, as here, it is decided only on the intrinsic evidence. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331, 135 S.Ct. 831, 190 L.Ed.2d 719 (2015). We begin, as we must, with the claim language itself. *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1218 (Fed. Cir. 2020). The words of a claim are generally given their ordinary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc).

 **[4]** **[5]** **[6]** **[7]** At issue in this appeal is the proper construction of the articles "a" and "said." We have explained that the indefinite article "a" means " 'one or more' in open-ended claims containing the transitional phrase 'comprising.' " *Convolve*, 812 F.3d at 1321 (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)). "An exception to the general rule that 'a' ... means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43 (Fed. Cir. 2008). We have also explained that "[t]he use of the term 'said' indicates that this portion of the claim limitation is a reference back to the previously claimed" term. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *see Baldwin*, 512 F.3d at 1343 (the claim term "said" is an "anaphoric phrase[ ], referring to the initial antecedent phrase"). "The subsequent use of [the] definite article[ ] ... 'said' in a claim to refer back to the same claim term does not change the general

plural rule, but simply reinvokes that non-singular meaning." *Baldwin*, 512 F.3d at 1342.

In *Baldwin*, for example, we considered a patent describing systems for cleaning the cylinder of a printing press using cleaning fabric. [1] *Id.* at 1340. There, the claim recited "a pre-soaked fabric roll" and subsequently recited "said fabric roll." *Id.* We held that "a pre-soaked fabric roll" meant "one or more" pre-soaked fabric rolls, and that the subsequent "said fabric roll" maintained that non-singular meaning. *Id.* at 1342–43. But we did not hold in *Baldwin* that using an indefinite article somehow displaces the antecedent basis rule, as to require "said fabric roll" to refer to something other than the same earlier referenced "pre-soaked fabric roll." *See id.* at 1343 (stating that the Manual of Patent Examining Procedure "describes the need, in most cases, for claim terms to have proper antecedent bases"). In other words, in *Baldwin*, the "said fabric roll" was the same "one or more" pre-soaked fabric rolls that were referred to earlier in the claim.

[1]    The claim at issue in *Baldwin* recited in relevant part:

> A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:
> (1) *a pre-soaked fabric roll* saturated to equilibrium with cleaning solvent disposed around a core, *said fabric roll* having a sealed sleeve which can be opened or removed from *said fabric roll* for use of *said fabric roll*, ... and said system including
> (2) means for locating *said fabric roll* adjacent to and operatively associated with a cylinder to be cleaned.
>
> 512 F.3d at 1340 (emphasis added).

 **\*4** We considered a similar claim construction dispute in *Harari v. Lee*, 656 F.3d 1331 (Fed. Cir. 2011), a case involving rewritable memory chips. There, the parties disputed the terms "a bit line" and "said bit line." [2] The relevant claim recited a method comprising accessing a number of control gates and "a bit line" to activate a number of cells. *Id.* at 1341. Noting that "*Baldwin* ... does not set a hard and fast rule that 'a' always means one or more than one," we determined that "[t]he plain language of the claim clearly indicates that only a single bit line is used when accessing a number of cells." *Id.* We thus concluded that "the correct and only reasonable construction of the claim terms 'a bit line' and 'said bit line' ... requires that a single bit line activates multiple memory cells."

*Id.* at 1342. Stated otherwise, "said bit line" later in the claim must be the same, singular bit line as "a bit line" earlier in the claim.

2    The claim at issue in *Harari* recited in relevant part:
      A method of treating at least one erased EEprom cell, comprising:
      [(1)] accessing a number of control gates and accessing *a bit line*, thereby activating a number of memory cells, ... ; [and]
      [(2)] subsequent to accessing *said bit line*, sensing the presence of at least one activated cell from said number of memory cells ...
    *Harari*, 656 F.3d at 1340 (emphasis added).

We followed similar reasoning in *Convolve*, which involved a claim element introduced with the indefinite article "a" and further defined by certain recited characteristics. 812 F.3d at 1321. Specifically, we interpreted "[u]ser interface for ... working with *a processor* ... comprising" in claims 1, 3, and 5 to require "a single processor" having all of the subsequently recited characteristics. *Id.* (emphasis added). In reaching this conclusion, we considered the subsequent references to the initial processor:

> Specifically, claim 1 recites "a processor" in the preamble before recitation of "comprising," and the claim body uses the definite article "the" to refer to the "processor." This reference to "the processor," referring back to the "a processor" recited in [the] preamble, supports a conclusion that the recited user interface is "operatively working with" the same processor to perform all of the recited steps. In other words, the claim language requires a processor associated with the user interface to issue the shaped commands of the claims. Given this claim language, which contrasts with the claims described above that allow for multiple processors, we conclude that claims 1, 3, and 5 require the user interface to work with a single processor in performing all of the claim steps.

*Id.* at 1321.

Claim 9, however, had no subsequent reference to "the" or "said" processor. Because that claim did not reference a single processor, we interpreted "a processor" to mean "one or more processors" in the context of that claim. *See id.*

Finally, in *Varma*, we considered claims directed to performing statistical analyses of investment data. 816 F.3d at 1355. There, the disputed claim limitation was "a statistical analysis request corresponding to two or more selected investments." *Id.* at 1362. The Patent Trial and Appeal Board held that the limitation could be satisfied even if two statistical analysis requests were required to analyze the "two or more selected investments." *Id.* We reversed the Board's decision, explaining that:

> [T]he question is not whether there can be more than one request in a claim-covered system: there can. Rather, the question is whether "a" can serve to negate what is required by the language following "a": a "request" (a singular term) that "correspond[s]" to "two or more selected investments." It cannot. For a dog owner to have "a dog that rolls over and fetches sticks," it does not suffice that he have two dogs, each able to perform just one of the tasks. In the present case, no matter how many requests there may be, no matter the variety of the requests the system may receive, the system must be adapted to receive a request that itself corresponds to at least two investments.

**\*5** *Id.* at 1362–63.

*Varma* thus dealt with claim language that introduces a claim element using an indefinite article and further defines the element with subsequently recited functionality. While this structure may allow for more than a single instance of the claim element, it may nonetheless require that a single instance of the element be capable of performing all the recited functionality.

 **[8]** With this precedent in mind, we agree that the district court correctly construed the claim term Mr. Salazar challenges on appeal. Specifically, the district court properly interpreted "a microprocessor for generating ..., said microprocessor creating ..., a plurality of parameter sets retrieved by said microprocessor ..., said microprocessor generating ..." to mean "one or more microprocessors, at least one of which is configured to perform the generating, creating, retrieving, and generating functions."

*Claim Construction Op.*, 2020 WL 5608640, at \*19. We agree with the district court that while the claim term "a microprocessor" does not require there be only one microprocessor, the subsequent limitations referring back to "said microprocessor" require that at least one microprocessor be capable of performing each of the claimed functions. This approach is entirely consistent with our precedent.

Like the claim language in *Convolve* and *Varma*, the claim language here requires a singular element—"*a* microprocessor"—to be capable of performing all of the recited functionality. *See Convolve,* 812 F.3d at 1321 (requiring "*a* processor" and "*the* processor" in claims 1, 3, and 5 to "perform all of the recited steps"); *Varma,* 816 F.3d at 1362–63 (finding "*a* statistical analysis request corresponding to two or more selected investments" requires a single request to correspond to at least two investments where the subsequent language "makes it unmistakable that at least two investments must be the subject of each statistical analysis"). This conclusion is bolstered when we consider *Convolve*'s claim 9, which had no subsequent reference to "the" or "said" processor, and thus did not require a single processor. 812 F.3d at 1321. Here, the claim language "a microprocessor," read in the context of the full claim, aligns more closely with *Convolve*'s claims 1, 3, and 5—which required "*a* processor" and "*the* processor" to perform the recited functionality—and, like those claims, should be construed to require at least one microprocessor capable of performing the recited functions.

Mr. Salazar would have us read the phrase "one or more" in the district court's claim construction to mean "*any one of the* one or more" when referring to the laterrecited functions. Appellant's Br. 35. We decline to do so. Although Mr. Salazar insists that the phrase "said microprocessor" "simply reinvokes th[e] non-singular meaning," *Id.* at 22 (quoting *Baldwin,* 512 F.3d at 1342), the claim's use of "said" does not negate what is required by the language that follows "said": a "microprocessor" that "generat[es]," "creat[es]," and "retriev[es]." As we stated in *Varma*, "[f]or a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice that he have two dogs, each able to perform just one of the tasks." 816 F.3d at 1363. Here, it does not suffice to have multiple microprocessors, each able to perform just one of the recited functions; the claim language requires at least one microprocessor capable of performing each of the recited functions.

**\*6** Because we agree with the district court's claim construction, we affirm its judgment of noninfringement.

II

We now turn to AT&T's cross-appeal challenging (1) the district court's ruling that Mr. Salazar's claims were not barred by claim preclusion or the *Kessler* doctrine; and (2) the district court's finding that the asserted claims were not invalid as anticipated.

At oral argument, AT&T agreed that we need not reach its preclusion arguments if we affirm the district court's judgment of noninfringement. *See* Oral Arg. at 9:46–10:10, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2320_11072022.mp3. As explained above, we affirm the district court's judgment and, accordingly, do not address this issue.

Finally, we turn to AT&T's anticipation argument. The jury found that the asserted claims were not anticipated, and the district court subsequently entered judgment consistent with that finding. On appeal, AT&T argues that "[i]t was reversible error for the district court to hold that asserted claims 1–7, 27–30, and 34[ ] are not anticipated" because AT&T "presented substantial, clear and convincing evidence" that the asserted claims are anticipated. Cross-Appellants' Br. 49–50. But AT&T failed to move for judgment as a matter of law under Federal Rule of Civil Procedure 50. Its failure to do so dooms this argument.

**[9]   [10]**   A party must make proper motions under Rule 50 in order to appeal an adverse verdict on grounds relating to the sufficiency of the evidence. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1308 (Fed. Cir. 2011) ("Rule 50(a)(2) requires the moving party" to make its motion for judgment as a matter of law "to preserve the issue."); *Feld Motor Sports, Inc. v. Traxxas, L.P.*, 861 F.3d 591, 596 (5th Cir. 2017) ("[T]his court has jurisdiction to hear an appeal of the district court's legal conclusions ..., but only if it is sufficiently preserved in a Rule 50 motion."). Here, AT&T did not move under Rule 50 regarding any validity ground, including anticipation. As a result, it never challenged the sufficiency of the evidence with respect to anticipation before the district court, and it has therefore waived its anticipation challenge on appeal.

Hoping to correct its error, AT&T requests we "liberally constru[e]" Rule 50(a) to require parties to move under that Rule only if " 'the court [or opposing] attorneys needed

any more enlightenment about [the appellant's] position on those issues.' " Cross-Appellants' Reply Br. 19–20 (quoting *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1380 (Fed. Cir. 2009)). But AT&T's reliance on *Blackboard* is misplaced. In *Blackboard*, the defendant made "cursory" Rule 50(a) motions regarding anticipation and obviousness, and the district court acknowledged those motions. 574 F.3d at 1379. We held that "in light of the Fifth Circuit's practice of liberally construing the rule," the cursory motions and "the district judge's prompt statement that he would take both motions under advisement, made clear that no more was necessary to serve the purposes of Rule 50(a)." *Id.* at 1379–80.

That was not the case here. In contrast to the defendant in *Blackboard*, AT&T explicitly expressed to the district court that it would not move under Rule 50(a) regarding anticipation:

 **\*7** THE COURT: Let me hear from Defendants. What matters do Defendants seek relief on under Rule 50(a)?

[COUNSEL FOR AT&T]: Your Honor, we intend to seek relief on issues of infringement, damages, and preclusion.

THE COURT: Not on anticipation under Rule 102?

[COUNSEL FOR AT&T]: We are not moving under Rule 50(a) for anticipation.

J.A. 1572 (Trial Tr. 198:16–22). In other words, AT&T clearly disavowed any intention to move for judgment as a matter of law regarding anticipation. Accordingly, even under the most liberal construction of the requirements of Rule 50(a), AT&T has nevertheless waived its anticipation argument.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the judgment of noninfringement.

**AFFIRMED**

## COSTS

No costs.

**All Citations**

--- F.4th ----, 2023 WL 2778774

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.