

**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000

orrick.com

E. Joshua Rosenkranz

E  jrosenkranz@orrick.com
D  +1 212 506 5380
F  +1 212 506 5151

November 1, 2023

**BY CM/ECF**

Jarrett B. Perlow
Circuit Executive & Clerk of the Court
United States Court of Appeals for the
  Federal Circuit
717 Madison Place, N.W.
Washington, DC  20439

Re:   *Sonos, Inc. v. ITC*, Nos. 2022-1421, -1573

Dear Mr. Perlow:

This Court recently issued *Finjan LLC v. SonicWall, Inc.*, No. 2022-1048, 2023 WL 6775035 (Fed. Cir. Oct. 13, 2023), which is the third decision since briefing closed that addresses variations on the claim-construction issue presented by the '896 patent's second-message limitation. *Finjan* confirms the pattern Sonos has previously described.

As explained, *01 Communique Laboratories, Inc. v. LogMein, Inc.*, 687 F.3d 1292 (Fed. Cir. 2012), applied the interpretive rule that a claim requiring a group of containers to contain multiple items (or functions) ordinarily does not require all items (or functions) to appear together in any one container. Opening Br. 31-32; Sonos Reply 4-7. Subsequent cases recognized exceptions to that rule where something special about the claim's structure (as in *Salazar*) or the prosecution history (as in *Varma*) demanded a narrower construction. *See* Sonos May 17, 2023 Letter re *Salazar*. Absent such special circumstances, however, *01 Communique*'s rule governs (as in *Nicira*). *See* Sonos May 17, 2023 Letter re *Nicira*.

Whereas previous opinions in the two lines of cases did not cross-reference one another, *Finjan* expressly reconciles them. *Finjan* acknowledges *01 Communique*'s ruling—that several claimed software functions "may be distributed among multiple locator server computers" and need not "be contained entirely on a single locator server computer." 2023 WL 6775035, at *8 (quoting *01 Communique*, 687 F.3d at 1296). *Finjan* declined to read its claim the same way because of the structural exception that *Salazar* previously recognized. The *Finjan* claim introduces the term



Page 2

"a computer" (meaning "one or more" computers), then defines its corresponding functionality through subsequent limitations that repeatedly refer back to "the computer." *Id.* at *1, *8. *Salazar*, and the *Convolve* decision it cited, held that a comparable antecedent claim structure compelled a more restrictive construction. Sonos May 17, 2023 Letter re *Salazar*. *Finjan* followed suit, declining to apply *01 Communique* solely because it had not addressed the same antecedent structure of "several subsequent claim limitations referring to that computer." 2023 WL 6775035, at *8.

Sonos's second-message limitation matches the claim structure in *01 Communique* and *Nicira*, not *Finjan, Salazar,* and *Convolve*. *01 Communique*'s interpretive rule therefore applies.

                                      Sincerely,

                                      */s/ E. Joshua Rosenkranz*
                                      E. Joshua Rosenkranz
                                      *Counsel for Sonos, Inc.*

cc. Counsel of record (via CM/ECF)

2023 WL 6775035
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

FINJAN LLC, fka Finjan, Inc., Plaintiff-Appellant

v.

SONICWALL, INC., Defendant-Appellee

2022-1048
|
Decided: October 13, 2023

**Synopsis**
**Background:** Patentee brought infringement action against defendant, alleging that defendant's network-security products and gateways infringed four patents related to protecting network-connectable devices from undesirable downloadable operations and one patent related to adaptive, rule-based content scanners that scan mobile content for exploits to facilitate network security. The United States District Court for the Northern District of California, Beth Labson Freeman, J., 2019 WL 1369938, construed certain disputed claim terms, then, 2021 WL 11961438, granted summary judgment to defendant of noninfringement of certain asserted claims and, 2021 WL 3111685, found the asserted claims in three patents invalid for indefiniteness based on giving collateral-estoppel effect to an order, 2021 WL 1241143, in a separate infringement action brought by patentee that was subsequently, 51 F.4th 1377, vacated. The District Court, Freeman, J., also granted defendant's motion to exclude certain damages testimony of patentee's expert. Patentee appealed.

**Holdings:** The Court of Appeals, Cunningham, Circuit Judge, held that:

vacatur of judgment in separate case that had been given collateral-estoppel effect required vacatur of district court's invalidity judgment resting on that vacated judgment;

defendant's network gateways did not infringe patents related to protecting network-connectable devices from undesirable downloadable operations under parties' stipulated claim construction of patent term "downloadable";

defendant's network-security products, in combination with each other, did not infringe asserted claims in patent related to adaptive, rule-based content scanners that scan mobile content for exploits to facilitate network security; and

district court did not abuse its discretion in excluding patentee's damages expert's analyses, and related damages opinions, with respect to apportioning damages between patented and unpatented features of the accused products.

Invalidity judgment vacated and remanded; summary judgment of noninfringement and order excluding patentee's expert's testimony affirmed.

Bryson, Circuit Judge, filed opinion concurring in part and dissenting in part.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment; Motion to Exclude Expert Report or Testimony.

Appeal from the United States District Court for the Northern District of California in No. 5:17-cv-04467-BLF, Judge Beth Labson Freeman.

**Attorneys and Law Firms**

Juanita Rose Brooks, Fish & Richardson, PC, San Diego, CA, argued for plaintiff-appellant. Also represented by Jason W. Wolff; Michael John Ballanco, Washington, DC; Robert Courtney, Minneapolis, MN.

Matthew Christopher Gaudet, Duane Morris LLP, Atlanta, GA, argued for defendant-appellee. Also represented by John R. Gibson; Jarrad Gunther, Robert M. Palumbos, Joseph Powers, Philadelphia, PA; Pierre J. Hubert, Austin, TX.

Before Reyna, Bryson, and Cunningham, Circuit Judges.

**Opinion**

Opinion concurring in part and dissenting in part filed by Circuit Judge Bryson.

Cunningham, Circuit Judge.

**\*1** Finjan LLC sued SonicWall, Inc. for patent infringement in the United States District Court for the Northern District of California. Because the district court based its judgment of invalidity on a collateral estoppel decision that we have since vacated, we vacate the district court's judgment of invalidity and remand for further proceedings. We also affirm the district

court's grant of summary judgment of noninfringement and the district court's decision to exclude Finjan's expert analysis.

## I. BACKGROUND

Finjan asserted U.S. Patent Nos. 8,677,494, 6,154,844, 6,804,780, and 7,613,926 (collectively, the "Downloadable Patents"), as well as U.S. Patent No. 8,225,408 (the "ARB Patent") (collectively, the "Asserted Patents"), among others. J.A. 294–95 (Complaint ¶ 57); Amended Complaint ¶¶ 9, 15, 18, 27, 33, *Finjan LLC v. SonicWall, Inc.*, No. 5:17-CV-04467-BLF (N.D. Cal. Nov. 9, 2018) ("*Amended Complaint*"). Finjan alleged patent infringement as to SonicWall's (1) Gateways; (2) Email Security products ("ES products"); and (3) Capture Advanced Threat Protection ("Capture ATP"), among other products. J.A. 42 (Summary Judgment Order); *see also* J.A. 289–94 (Complaint); *Amended Complaint* ¶¶ 46–56.

The Downloadable Patents relate to ways to protect network-connectable devices from undesirable downloadable operations. *See, e.g.*, '494 patent col. 1 ll. 60–63; '844 patent col. 1 ll. 23–27; '780 patent col. 1 ll. 31–34; '926 patent col. 1 ll. 37–40. Each claim of the Downloadable Patents requires interacting with a "Downloadable" or "incoming Downloadable." For example, claim 10 of the '494 patent recites:

> 10. A system for managing Downloadables, comprising:
>
> a receiver for receiving an incoming Downloadable;
>
> a Downloadable scanner coupled with said receiver, for deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable; and
>
> a database manager coupled with said Downloadable scanner, for storing the Downloadable security profile data in a database.

'494 patent col. 22 ll. 7–16.

The ARB Patent relates to adaptive, rule-based content scanners that scan mobile content for exploits to facilitate network security. '408 patent col. 1 ll. 19–20, 65–66. Claim 1 of the ARB Patent recites:

> 1. A computer processor-based multi-lingual method for scanning incoming program code, comprising:
>
> receiving, by a computer, an incoming stream of program code;
>
> determining, by the computer, any specific one of a plurality of programming languages in which the incoming stream is written;
>
> instantiating, by the computer, a scanner for the specific programming language, in response to said determining, the scanner comprising parser rules and analyzer rules for the specific programming language, wherein the parser rules define certain patterns in terms of tokens, tokens being lexical constructs for the specific programming language, and wherein the analyzer rules identify certain combinations of tokens and patterns as being indicators of potential exploits, exploits being portions of program code that are malicious;
>
> **\*2** identifying, by the computer, individual tokens within the incoming stream;
>
> dynamically building, by the computer while said receiving receives the incoming stream, a parse tree whose nodes represent tokens and patterns in accordance with the parser rules;
>
> dynamically detecting, by the computer while said dynamically building builds the parse tree, combinations of nodes in the parse tree which are indicators of potential exploits, based on the analyzer rules; and
>
> indicating, by the computer, the presence of potential exploits within the incoming stream, based on said dynamically detecting.

*Id.* col. 19 l. 45 to col. 20 l. 7.

SonicWall filed a motion seeking judgment of invalidity as to the asserted claims of the '780, '844, and '494 patents due to collateral estoppel based on a decision in related proceedings finding the claims of the '780 and '844 patents invalid for indefiniteness. *Finjan LLC v. SonicWall, Inc.*, No. 17-CV-04467-BLF, 2021 WL 3111685, at \*1 (N.D. Cal. July 22, 2021) ("*Collateral Estoppel Order*"); *see Finjan, Inc. v. ESET, LLC*, No. 3:17-CV-0183-CAB-BGS, 2021 WL 1241143, at \*5 (S.D. Cal. Mar. 29, 2021) ("*ESET*"). The district court agreed with SonicWall and granted judgment of invalidity due to collateral estoppel and indefiniteness as to claims of the '844, '780, and '494 patents. *Collateral Estoppel Order* at \*5. Subsequently, in the ESET case which

provided the underlying support for the *Collateral Estoppel Order*, Finjan appealed the district court's grant of summary judgment of invalidity. *Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1378–79 (Fed. Cir. 2022). On appeal in the related ESET case, we vacated the district court's grant of summary judgment of invalidity due to indefiniteness and remanded for further proceedings. *Id.* at 1384.

During claim construction, the parties agreed that "Downloadable" means "an *executable application program*, which is downloaded from a source computer and run on the destination computer." *Finjan, Inc. v. Sonicwall, Inc.*, No. 17-CV-04467-BLF, 2019 WL 1369938, at *3 (N.D. Cal. Mar. 26, 2019) ("*Claim Construction Order*") (emphasis added). Based on this construction, SonicWall moved for summary judgment of noninfringement of certain claims of the Downloadable Patents, arguing that its Gateway products could not infringe those claims because they never receive "Downloadables"—"*executable* application program[s]"— and instead, their Gateway products receive and inspect packets without extracting the data or reassembling the file within.[1] J.A. 44, 55–56 (Summary Judgment Order) (emphasis added). As explained by the district court, the parties' disagreement centered on "whether a device receives or obtains a Downloadable when it receives a sequence of packets of an executable file, but never re-assembles the packets into a final executable file format." J.A. 57. The district court concluded that Finjan failed to present evidence that the accused Gateway products "ever possess a reassembled file or executable application" or that "unassembled packets are an executable application program that can run on a destination computer." J.A. 57–58. Thus, the district court granted summary judgment of noninfringement of the asserted claims of the Downloadable Patents.[2] J.A. 58.

1   For this noninfringement theory, the claims in SonicWall's motion were claims 10 and 14 of the '494 patent, claims 41 and 43 of the '844 patent, and claim 9 of the '780 patent. J.A. 44. For ease of reference, we refer to these claims as the asserted claims of the Downloadable Patents or asserted claims throughout this opinion.

2   While the district court's order did not discuss claim 22 of the '926 patent, the parties agreed that its analysis on this issue applied equally to that claim and stipulated to judgment of noninfringement of that claim. J.A. 15792 (Stipulation and Order); Appellant's Br. 33 n.6.

**\*3** SonicWall also moved for summary judgment of noninfringement of the asserted claims of the ARB Patent, arguing that the relevant limitations needed to be completed by the same computer. J.A. 58. The district court agreed with SonicWall's interpretation of the claims and concluded that the recited claim limitations "must be performed by the same computer." J.A. 64. Because the parties did not dispute that "(1) Capture ATP and Gateways and (2) Capture ATP and ES products involve separate, remote computers,"[3] the district court granted summary judgment of noninfringement for the asserted claims of the ARB Patent. *Id.*

3   Finjan argued in a motion for reconsideration that there remained a factual dispute as to whether "(1) Capture ATP and its Gateway and (2) Capture ATP and its ES [products] each work together to act as a unified computer system to form the steps as Finjan alleges." J.A. 88 (Reconsideration Order). The district court found that Finjan failed to raise this argument in its opposition to summary judgment briefing, and that even considering the argument's merits, operating as a unified computer system would not meet the district court's requirement that a single computer perform each of the relevant limitations. J.A. 88–89.

SonicWall also filed a motion in limine to exclude certain opinions of Finjan's experts, which the district court granted. J.A. 111 (Motions in Limine Order); *see also* J.A. 92–116. SonicWall argued that Finjan's expert failed to perform a proper apportionment analysis and examine whether the "top-level functions" identified in SonicWall's documentation included substantial non-patented features. J.A. 108–09. The district court excluded the apportionment opinions of Finjan's technical expert, along with the opinions of Finjan's damages expert based on that apportionment analysis. J.A. 111.

Finjan timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II. STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed according to the law of the regional circuit. *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1027 (Fed. Cir. 2019). "In the Ninth Circuit, summary judgment is reviewed de novo, and is

appropriate when, viewing the evidence in favor of the non-movant, there is no genuine dispute of material fact." *Id.* (first citing *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017); and then citing *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017)).

"When reviewing damages in patent cases, we apply regional circuit law to procedural issues and Federal Circuit law to substantive and procedural issues pertaining to patent law." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1367 (Fed. Cir. 2021). The Ninth Circuit reviews "a district court's evidentiary rulings, such as its decisions to exclude expert testimony ... for an abuse of discretion." *Id.* (quoting *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859 (9th Cir. 2014)) (citation omitted).

### III. DISCUSSION

Finjan raises four arguments. First, Finjan challenges the district court's grant of judgment of invalidity of the claims of the '844, '780, and '494 patents based on collateral estoppel. Appellant's Br. 63–65. Second, Finjan seeks to reverse the district court's judgment of noninfringement as to the asserted claims of the Downloadable Patents, contending that receiving packets that contain a downloadable or portions thereof constitutes receiving a downloadable. *Id.* at 32–49. Third, Finjan challenges the district court's grant of summary judgment of noninfringement as to the ARB Patent, alleging that multiple computers can collectively perform the "by a computer" or "by the computer" limitations. *Id.* at 49–59. Fourth, Finjan argues that the district court abused its discretion in striking Finjan's expert apportionment analysis, which purportedly mirrored an apportionment analysis we previously approved in *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1312– 13 (Fed. Cir. 2018). Appellant's Br. 15–32. We address each argument in turn.

#### A. Invalidity

**\*4** Finjan argues that the district court's grant of judgment of invalidity based on collateral estoppel should be vacated because it was based on a district court's grant of summary judgment of invalidity that was subsequently vacated by this court. *Id.* at 63–65. We agree.

A party seeking to invoke collateral estoppel must show:

> (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) [the party against whom collateral estoppel is being asserted] had a full and fair opportunity to litigate the issue in the first action.

*Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022) (alteration in original) (quoting *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994)). For patent claims, collateral estoppel applies where the "issues of patentability" are identical, *i.e.*, where "the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity." *Id.* at 1381 (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). If a court reverses or vacates a judgment upon which a collateral estoppel decision is based, then collateral estoppel can no longer apply based on that decision. *Mills v. City of Covina*, 921 F.3d 1161, 1170 & n.2 (9th Cir. 2019) (citing *Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir. 1980)) ("A reversed or dismissed judgment cannot serve as the basis for a disposition on the ground of res judicata or collateral estoppel."); *see also Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1372 (Fed. Cir. 2013) (citations omitted).

These principles require us to vacate the district court's judgment of invalidity based on collateral estoppel here. The district court held that the *ESET* court's order meant that collateral estoppel required granting judgment of invalidity as to the claims of the '844, '780, and '494 patents. *Collateral Estoppel Order* at *2, *5. We have since vacated the judgment upon which the district court based its application of collateral estoppel. *See Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1379, 1384 (Fed. Cir. 2022). We cannot uphold applying collateral estoppel based on a vacated judgment.[4] *Mills*, 921 F.3d at 1170. Accordingly, we vacate the district court's grant of judgment of invalidity based on indefiniteness as to the claims of the '844, '780, and '494 patents and remand for further proceedings.

4   When reviewing the application of collateral estoppel, we are "generally guided by regional circuit precedent"—here, the Ninth Circuit—"but we apply our own precedent to those aspects of such a determination that involve substantive issues of patent law." *Ohio Willow Wood*, 735 F.3d at 1342.

### B. Noninfringement: Downloadable Patents

Finjan argues that the district court erred in determining that SonicWall Gateway products do not infringe the asserted claims because they receive a sequence of packets and not the downloadables themselves. Appellant's Br. 32– 49; *see* J.A. 57–58 (Summary Judgment Order). According to Finjan, the district court took the parties' agreed-upon construction of "Downloadable"—"an executable application program, which is downloaded from a source computer and run on the destination computer," *Claim Construction Order* at *3—and added a requirement that the downloadable also be "re-assembled by and executable at the receiver." Appellant's Br. 32; *see* J.A. 57–58 ("Finjan offers no evidence that the accused Gateways ever possess a reassembled file or executable application."). Finjan further argues that differences among the asserted claims—requiring "a receiver for receiving an *incoming* Downloadable," '494 patent claim 10 (emphasis added); a "communications engine for *obtaining* a Downloadable," '780 patent claim 9 (emphasis added); or "*means for receiving* a Downloadable," '844 patent claim 43 (emphasis added)—indicate that a downloadable does not need to be received "in an executable format" to infringe. Appellant's Br. 35–37, 39–40. In other words, to infringe, the downloadable need not be *reassembled and executable* at the receiver. *Id.* Finjan also contends that the district court's additional requirements are unsupported by the Downloadable Patents' specifications, which do not require reassembling packets or executing downloadables at a receiver. *Id.* at 42–47. Finally, Finjan argues that summary judgment of noninfringement was inappropriate even under the district court's new construction because Gateway products that receive packets containing the entire downloadable file would still infringe. *Id.* at 47–49.

**\*5** SonicWall contends that the district court's conclusion is derived directly from the parties' agreed-upon construction, which describes a downloadable as an "*executable* application program." Appellee's Br. 19–21. Finjan submitted testimony from its expert as to the meaning of "executable," and SonicWall provided evidence showing that its products do not satisfy that definition because they analyze data streams on a packet-by-packet basis *without reassembling* those packets to obtain the executable application program. *Id.* at 19–20. SonicWall argues that "Finjan did not identify any evidence" to oppose summary judgment. *Id.* at 20.

We agree with SonicWall that the district court's judgment of noninfringement flows from the parties' agreed upon construction. The asserted claims use "Downloadable" in different ways. *See, e.g.*, '494 patent claim 10 ("a receiver for receiving an incoming Downloadable"), claim 14 ("The system of claim 10 wherein the Downloadable includes program script."); '844 patent claim 41 ("receiving a Downloadable"), claim 43 ("means for receiving a Downloadable"); '780 patent claim 9 ("a communications engine for obtaining a Downloadable"). Yet the parties adopted a single construction of "Downloadable" for each of these claims: "an *executable* application program, which is downloaded from a source computer and *run on the destination computer.*" *Claim Construction Order* at *3 (emphases added). The parties' construction comes verbatim from the definition of "Downloadable" in the '844 and '780 patents' specifications. '844 patent col. 1 ll. 44–47; '780 patent col. 1 ll. 50–53.

We do not permit parties on appeal to raise claim construction arguments challenging a stipulated construction. *See, e.g., Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1322 (Fed. Cir. 2013); *see also Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1129 (Fed. Cir. 2021) ("Now Traxcell insists in retrospect that this construction was wrong. But having stipulated to it, Traxcell cannot pull an about-face."). Therefore, we focus our analysis on whether the district court erred in analyzing infringement under the parties' agreed-upon construction.

We conclude that a device that merely receives and forwards packets without reassembling their contents does not receive a downloadable, under the parties' agreed-upon construction, because that device does not receive an executable application program. The district court credited Finjan's expert, who defined an "executable application program" as "a piece of code that can actually execute, run, or perform a function on a system."[5] J.A. 57 (Summary Judgment Order). SonicWall then submitted evidence that its Gateway products do not ever possess a downloadable because they operate by "inspect[ing] the payload of each packet on a packet-by-packet basis and then send[ing] each

packet to its destination *without extracting the data and reassembling a file*" into an executable form. J.A. 56–57 (alterations in original) (emphasis added). Finjan never identified evidence challenging how SonicWall's products operate, arguing instead that SonicWall's understanding must be incorrect because "every device on the Internet," including SonicWall's device, receives program files in the same way, *i.e.*, "in a sequence of packets that contain the file's bits." J.A. 55–56. Given SonicWall's unrebutted evidence, we agree with the district court that SonicWall's products do not infringe under the parties' agreed-upon construction because they do not reassemble a received packet into an executable form, *i.e.*, one that can be executed or run. *See* J.A. 57.

5    Because the district court's interpretation of the word "executable" is based on Finjan's own expert's testimony, we disagree with the dissent's characterization that the parties disputed the meaning of "executable." *See* Dissent at —— – ——.

**\*6** We disagree that the district court impermissibly deviated from the parties' agreed-upon construction. It is within the discretion of the district court to clarify or elaborate on the claim construction, so long as it is only "elaborates on a meaning inherent in the previous construction." *Mformation Techs., Inc. v. Research in Mot. Ltd.*, 764 F.3d 1392, 1397 (Fed. Cir. 2014). In *Mformation*, the patentee argued that the district court impermissibly added an order-of-steps requirement to the claim construction—*i.e.*, a requirement that a connection must be completely established *before* the transmitting step begins. 764 F.3d at 1397. We concluded that the district court did not err or alter the construction, but rather clarified what was inherent in the construction. *Id.* Similarly, here, it is inherent in the stipulated construction that the "receiver" receives an assembled downloadable. *See, e.g.*, '494 patent, claim 1. At least dependent claims 9 and 18 of the '494 patent support this reading. Claim 9 derives from claim 1 and contemplates "disassembling the incoming Downloadable." *See id.* claim 9. Claim 18 derives from claim 10 and contemplates a "disassembler for disassembling the incoming Downloadable." *See id.* claim 18. This suggests that the incoming downloadable is assembled before it is received such that, in some embodiments, it will be disassembled after being received. *See Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022).

Finjan argues the district court's understanding of the claims—that downloadables refer to the executable application program, not the packets themselves—would exclude "preferred embodiments" of monitoring "internet traffic" because it would preclude any device that transmits information using packets from infringing. Appellant's Br. 44–46; *see, e.g.*, '844 patent col. 3 ll. 32–44 (describing using the invention to scan Internet traffic); '780 patent col. 3 ll. 7–17 (same); '494 patent col. 6 ll. 26–41 (same). A device could still monitor internet traffic and infringe the asserted claims by "receiving" or "obtaining" a downloadable whenever it reassembles the packet and gains possession of the downloadable itself. In other words, the "receiving" or "obtaining" step can include the reception and reassembly of the packets into an executable application program. The key point is that SonicWall's Gateway products never reassemble packets to receive or obtain the contents within, *i.e.*, the executable application program or downloadable. *See* J.A. 55–58 (Summary Judgment Order).

Finjan points to differences among the claims to argue that the district court's understanding of the parties' claim construction—that the claims only read on *executable* application programs, not packets—must be incorrect. As an example, Finjan points to the claims of the '780 patent, which require "obtaining a Downloadable that includes one or more references to software components" to argue that a device could infringe even when there are other "software components" (*i.e.*, remaining packets with pieces of the downloadable) remaining to be received. Appellant's Br. 39–40 (citing claims 1, 9, 17). We see no reason why references to other software components would refer to outstanding packets as opposed to other software relevant to the downloadable. *See, e.g.*, '780 patent col. 4 ll. 58–61 ("For example, the ID generator **315** may prefetch all classes embodied in or identified by the Java$^{TM}$ applet bytecode to generate the Downloadable ID."). This argument fails to grapple with the parties' agreed-upon construction and the testimony from its own expert, which confirms that a downloadable must be an executable application program that "can actually execute, run, or perform a function." *See* J.A. 56.

Similarly, Finjan argues that the claims of the '494 patent use "incoming Downloadable" to suggest that a packet can infringe the asserted claims because "receipt was in the process of coming in and [that process has] not completed." Appellant's Br. 39 (citing '494 patent claim 10). Finjan also cites the '494 patent's discussion of inspecting a "potential-Downloadable to see if it more likely includes executable code, and if it does, designating it as a Downloadable." Appellant's Br. 44 (cleaned up); '494 patent col. 19 l. 64 to

col. 20 l. 11. We are not persuaded that the '494 patent's discussion of a "*potential*-Downloadable" means the district court misinterpreted the parties' agreed-upon construction as applied to "*incoming* Downloadables," including because the parties agreed to apply a definition of downloadables found in the '844 and '780 patents and not the '494 patent. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1375–76 (Fed. Cir. 2015) (declining to incorporate limitations from one patent into parties' stipulated construction for a related patent, despite patents' overlapping discussion of "tagging"). Moreover, the claims of the '494 and '926 patents repeatedly introduce an "incoming Downloadable" and subsequently use "the Downloadable" to refer to the same limitation, confirming the patentee used "incoming Downloadable" and "Downloadable" interchangeably. *See, e.g.*, '494 patent claims 1, 10; '926 patent claims 1, 8, 15, 22, 29, 30.

**\*7** Finjan argues that the district court's understanding of the parties' claim construction has no support in the specifications of the Downloadable Patents. Appellant's Br. 32. For example, Finjan argues that the Downloadable Patents do not describe or require a downloadable to be "re-assembled by and executable at the receiver." Appellant's Br. 39, 42–43. The parties' agreed-upon construction is supported by the specifications—it is taken verbatim from the '780 and '844 patents. '780 patent col. 1 ll. 50–53 (providing definition adopted by parties); '844 patent col. 1 ll. 44–47 (same).

Finjan also challenges the district court's construction because certain packets may contain an entire downloadable, such that a device receives a downloadable when it receives that packet containing the entire downloadable. Appellant's Br. 48. Finjan's arguments assume that the district court based its judgment of noninfringement solely on the fact that most IP packets contain only a portion of the larger downloadable they are transmitting. However, the district court based its judgment on the fact that an unassembled packet containing a downloadable is not executable. J.A. 58 ("While Finjan emphasizes that transmitted IP packets 'contain[ ]' Downloadables, it offers no evidence that unassembled packets are an executable application program that can run on a destination computer[.]" (citations omitted)). Finjan's argument that a packet can contain the entire downloadable itself fails to address the crux of the district court's reasoning.

We see no evidence from Finjan demonstrating that SonicWall's products operate differently than the district court described. Accordingly, we affirm the district court's grant of summary judgment of noninfringement as to claims 10 and 14 of the '494 patent, claims 41 and 43 of the '844 patent, and claim 9 of the '780 patent.

### C. Noninfringement: ARB Patent

Finjan argues that the district court erred in determining that SonicWall's Capture ATP technology *in combination with* SonicWall's Gateways and/or ES products cannot infringe the asserted claims of the ARB Patent and requiring each recited step be performed by "a single, standalone computer." Appellant's Br. 49, *see also id.* 50–62. According to Finjan, the ARB Patent requires "a computer"—subsequently referred to as "the computer"—to perform certain steps, where the use of "a" indicates that "one or more" computers can perform the various steps of the claim. *Id.* at 54 (quoting *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)). Finjan argues the district court's decision cannot be squared with *01 Communique Laboratory, Inc. v. LogMeIn, Inc.*, where we concluded that "a location facility" could "be distributed among multiple locator server computers." *Id.* at 56–57 (citing 687 F.3d 1292, 1296 (Fed. Cir. 2012)).

SonicWall argues that Finjan never disputed that its Capture ATP and Gateway products are performed by different computers, challenging only whether the claims required the "same computer" to perform the claim limitations. Appellee's Br. 31 (citing Finjan's Opp. Summ. J. at J.A. 11146). SonicWall argues that even if the reference to "a computer" may mean "one or more computers," the subsequent references to "the computer" can only be satisfied by the same "one or more computers" that satisfied the first limitation. Appellee's Br. 33–35.

We agree with SonicWall. For example, in *Salazar v. AT&T Mobility LLC*, we agreed with the district court that "while the claim term 'a microprocessor' does not require there be only one microprocessor, the subsequent limitations referring back to 'said microprocessor' require that at least one microprocessor be capable of performing each of the claimed functions." 64 F.4th 1311, 1317 (Fed. Cir. 2023). Similar to this court's holding that "said" indicates part of a claim limitation refers to the corresponding part of a previously claimed limitation, *see Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015), the use of "the" also indicates the claimed term refers to an antecedent term. *See, e.g., Convolve, Inc. v. Compaq Comput. Corp.*,

812 F.3d 1313, 1321 (Fed. Cir. 2016) ("This reference to 'the processor,' referring back to the 'a processor' recited in preamble, supports a conclusion that the recited user interface is '*operatively working with*' *the same processor* to perform all of the recited steps." (emphasis added)). The same logic from *Salazar* applies here.

 **\*8** Furthermore, we previously examined a similar claim construction argument in *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1143–44 (Fed. Cir. 2021) ("*Nokia*"). In *Nokia*, we explained that "[a]s a matter of plain language, reciting 'a computer' (or a 'first computer') that performs a function, and then further reciting that '*the* computer' (or '*said* first computer') performs multiple additional functions, suggests that such 'computer' must be tied to all those functions." *Id.* This same rationale is relevant in analyzing the claims here.

We see no inconsistency between the holdings in *Salazar* and *Nokia* and the principles outlined in *Baldwin*. "[T]he indefinite article a means one or more in open-ended claims containing the transitional phrase comprising." *Salazar*, 64 F.4th at 1315 (cleaned up) (quoting *Convolve*, 812 F.3d at 1321). But that is a separate issue from whether the claims require the same component to perform multiple functions or satisfy multiple limitations of a claim. *See Salazar*, 64 F.4th at 1318 ("[I]t does not suffice to have multiple microprocessors, each able to perform just one of the recited functions; the claim language requires at least one microprocessor capable of performing each of the recited functions."); *see also Baldwin*, 512 F.3d at 1342 (not addressing whether the use of a definite article to refer to the initial antecedent phrase requires the same component to perform the later limitation).

Finjan relies heavily on our decision in *01 Communique*. *See* Appellant's Br. 56–59. In that case, the claim required, among other limitations, "a *locator server computer* linked to the Internet[;] its location on the Internet being defined by a static IP address[;] and including *a location facility* for *locating the personal computer*;" where the location facility is "operable" to create a communication channel between a remote computer and a personal computer. 687 F.3d at 1294–95 (first and third emphases added). The parties disputed whether the "location facility" software "must be contained entirely on a single locator server computer ... or whether it may be distributed among multiple locator server computers." *Id.* at 1296. We explained that the use of "a," "its," and "the" in the claims did not require the locator server computer to be a single computer, especially where the patent disclosed that "the locator server computer may comprise multiple computers." *Id.* at 1297. But *01 Communique* does not consider whether the same computer must perform each of several subsequent claim limitations referring to that computer, and we see nothing in that decision contradicting the principles outlined in *Salazar* and *Nokia*.

With this understanding of our precedent in mind, we agree with the district court's grant of summary judgment of noninfringement as to asserted claims of the ARB Patent. Claim 1 of the ARB Patent requires that the same computer perform each of the claimed steps "receiving ...," "determining ...," "instantiating ...," "determining ...," "identifying ...," "dynamically building ...," "dynamically detecting ...," and "indicating ...." '408 patent claim 1. Claim 22 is even more explicit, requiring "*a computer* to perform" the claimed steps. *Id.* claim 22 (emphasis added). Even if an infringing system can use "one or more computers," the plain language of the claims requires at least one of those computers to perform all the functions listed in the claims of the ARB Patent.

Finally, Finjan argues that even if the ARB Patent requires a single "computer" to perform each step of claims 1 and 22, granting summary judgment was still improper because a "computer" can be "comprised of a combination of computers working together." Appellant's Br. 59–61 (citing *Symantec v. Comp. Assocs. Int'l*, 522 F.3d 1279, 1291 (Fed. Cir. 2008) (explaining that "the ordinary meaning of the terms 'computer' and 'computer system' " are "not limited to a single, stand-alone computer or workstation")). The district court, in denying Finjan's motion for reconsideration, concluded that (1) even if Finjan argued SonicWall's products operated "as unified computer systems," it did not show that a "single computer satisfies the relevant limitations," and (2) under the standards for granting a motion for reconsideration, Finjan failed to show the district court's "manifest failure" to consider Finjan's legal arguments. J.A. 88–89 (Reconsideration Order). Besides its argument that the claims do not require a single computer to perform each limitation, Finjan does not challenge the district court's reasoning for denying Finjan's reconsideration motion. Appellant's Br. 60–61. We agree with the district court that the analysis above is dispositive. We are not persuaded *Symantec* requires a different outcome for the claims we consider here, which require the same computer to perform each of several subsequent claim limitations. *See* '408 patent claims 1, 22; *Symantec*, 522 F.3d at 1291.

**\*9**  We affirm the district court's grant of summary judgment of noninfringement as to the asserted claims of the ARB Patent. J.A. 64.

### D. Expert Analysis

Lastly, Finjan challenges the district court's grant of SonicWall's motion to exclude the apportionment analysis of one Finjan expert and the opinion of another Finjan expert relying on the apportionment analysis. Appellant's Br. 21–32. In that order, the district court found that Finjan's expert providing the apportionment analysis "slapped top-level function labels onto the accused products without particularizing how apt the labels were" and then failed to analyze how "sub-features" within those top-level functions related, if at all, to the Asserted Patents. J.A. 110 (Motions in Limine Order). As an example, Finjan argued that SonicWall SuperMassive's RFDPI Engine benefitted from the technology in the ARB patent "at least by how incoming ... program code ('408 [patent]) is received." *Id.* But Finjan's expert never then analyzed the five sub-features listed underneath the RFDPI engine, meaning his analysis never established "the extent to which these sub-features involve receiving incoming ... program code." *Id.* The district court struck Finjan's expert apportionment analysis because he offered "no analysis of whether SonicWall customers derived value solely from the patented features of the top-level function or whether the top-level functions included non-accused or non-patented functions at all." *Id.* Accordingly, the district court also struck the related damages opinions relying on the apportionment analysis. J.A. 111.

Finjan argues that the district court's decision cannot stand in light of our decision in *Blue Coat.* Appellant's Br. 21–26 (citing 879 F.3d at 1312–13). In that case, a different Finjan expert based her apportionment analysis on a diagram prepared by the accused infringer that organized the accused products' functionality into twenty-four boxes; she "assumed that each box represented one top level function and that each function was equally valuable." 879 F.3d at 1312–13. Finjan argues that we "confirmed that the methodology in [*Blue Coat*] satisfied the apportionment requirement," such that the district court should have permitted its expert to offer similar analysis of top-level features in this case. Appellant's Br. 21–24. In Finjan's view, an expert need only distinguish between "patented and unpatented features," not *sub*-features. *Id.* at 21 (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226–27 (Fed. Cir. 2014)).

SonicWall responds that *Blue Coat* is inapposite because it arises in the context of a jury verdict, not a district court exercising its discretion to exclude unreliable expert testimony. Appellee's Br. 44–45. Because the district court identified the correct law and its decision on this issue is otherwise logical and supported, SonicWall argues that the district court did not abuse its discretion in excluding Finjan's expert apportionment analysis. Appellee's Br. 50–51.

We agree that the district court did not abuse its discretion in excluding Finjan's expert apportionment analyses. "[T]he patentee ... must in every case give evidence tending to separate or apportion ... the patentee's damages between the patented feature and the unpatented features[.]" *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (quoting *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884)); *see also Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022) (same). "[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson*, 773 F.3d at 1226 (citing *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014)).

**\*10**  The SonicWall documents relied upon by Finjan's expert to identify the purported "top-level functions" divide those functions into additional sub-features. *See* J.A. 14145 (listing "feature summary" for SonicWall products); J.A. 14142–44 (describing additional features of each "top-level" feature). Because Finjan's expert admitted that he presented no analysis to assess the value of the sub-features, J.A. 13958, the district court did not abuse its discretion by concluding that Finjan's expert failed to carefully tie his analysis to allegedly infringing features and to exclude value attributable to unpatented features. *See Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("[T]o be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." (citation omitted)).

Nor are we persuaded by Finjan's reliance on *Blue Coat.* In *Blue Coat*, we held—as we do here—that Finjan's expert failed to apportion the value of unpatented elements from patented elements. 879 F.3d at 1311–12. The other portion of *Blue Coat* on which Finjan's appeal focuses is inapposite, because it concerns whether a jury's damages award was

supported by substantial evidence, *id.* at 1312, whereas this appeal concerns the district court's discretion to strike Finjan's expert apportionment analyses before it went to a jury. *Blue Coat* is also distinguishable because the jury's damages award was based on an expert who relied on a document that identified twenty-four relevant features but identified no sub-features of those relevant features, whereas here the documents Finjan's expert relied on identify nearly 100 sub-features. *Compare* 879 F.3d at 1312–13, *with* J.A. 14142–45.

Because the district court did not abuse its discretion, we affirm the district court's decision to strike the apportionment analysis of Finjan's expert and the related damages opinions. J.A. 110–11 (Motions in Limine Order).

## IV. CONCLUSION

We have considered Finjan's remaining arguments and find them unpersuasive. For these reasons, we vacate the district court's judgment of invalidity based on collateral estoppel as to the claims of the '844, '780, and '494 patents; we affirm the district court's grant of summary judgment of noninfringement as to the asserted claims of the Downloadable Patents and the ARB Patent; and we affirm the district court's decision to exclude Finjan's expert apportionment analysis and the related damages opinions. We remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART AND REMANDED**

## COSTS

No costs.

Bryson, Circuit Judge, concurring in part and dissenting in part.
I join the majority opinion with respect to its treatment of the '408 patent, the expert opinion of Dr. Striegel, and the district court's judgment of invalidity based on collateral estoppel. However, I believe that the district court erred in its disposition of the Downloadable patents, and I would not affirm the judgment as to those patents.

In the district court the parties stipulated that the term "Downloadable" should be construed to mean "an executable application program, which is downloaded from a source computer and run on a destination computer." J.A. 5. In granting summary judgment of non-infringement of the Downloadable patents, the district court accepted SonicWall's assertion that the Gateway device does not infringe because the Gateway does not receive an executable program, but only a series of packets that must be reconstructed before actually being executed. J.A. 55–58. By resolving the issue in that manner, the court effectively further construed the term Downloadable to require the Downloadable to be capable of being executed in the form and at the time of its receipt by the intermediate computer, rather than being reconstructed by the destination computer before execution. I disagree with that construction, for two reasons.

**\*11** First, to construe the term Downloadable in that manner would read the preferred Internet embodiments out of the claims of at least two of the Downloadable patents. As the district court noted, it was undisputed that network devices transmit files in a sequence of packets. J.A. 57. As a result, any computer that receives a Downloadable over a network will receive it in the form of packets that must be reconstructed before the Downloadable may be executed. The district court's ruling that the Downloadable patents require that the Downloadable be executable upon receipt by the receiver therefore means that the Downloadable patents would not read on any network that uses packetized files. That anomalous result strongly suggests that the term "executable" should be understood to refer to a file that is capable of being executed once it is reconstructed from the packetized form in which the file was transmitted and received.[1]

---

[1] The majority contends that the district court's construction would not render the Downloadable claims nugatory because receiver systems other than SonicWall's reconstruct the packets after receiving them in order to scan them for malware in their reconstructed form. In that respect, the majority suggests, those systems can be said to "receive" or "obtain" Downloadables. While that may be true for the '780 patent, which claims methods or systems for "obtaining a Downloadable," it is not true for the other three Downloadable patents, which claim methods and systems for "receiving a Downloadable" ('844 patent), or methods and systems for "receiving an incoming Downloadable" ('926 patent and '494

patent). And even if, despite the awkwardness of the construction, a receiver that reconstructs a file can be said, under the district court's understanding, to be "receiving a Downloadable" from itself, it cannot reasonably be said to be "receiving an *incoming* Downloadable." Thus, the district court's construction would, at minimum, leave the claims of the '926 patent and the '494 patent with no scope as to the Internet embodiments.

The majority also finds support for its interpretation of the term "Downloadable" in claims 9 and 18 of the '494 patent, which recite that deriving Downloadable security data "comprises disassembling the incoming Downloadable" (claim 9) and that the Downloadable scanner "comprises a disassembler for disassembling the incoming Downloadable" (claim 18). But "disassembly" in this context refers to extracting data from packets. *See* Dennis Longley & Michael Shain, *Dictionary of Information Technology* 94 (2d ed. 1986) (defining "disassembler" as "a device that extracts the message content from packets"). Assembly means the opposite. *See Microsoft Computer Dictionary* 386 (5th ed. 2002) (referring to "assembling/disassembling packets"). As the majority notes, claims 9 and 18 imply that the incoming Downloadable is assembled before it is received. "Assembled," however, means assembled into packets—not into a reconstructed file. Because claims 9 and 18 indicate that Downloadables are received in packet form, they support Finjan's interpretation of the term, not SonicWall's.

SonicWall argues that Finjan agreed to the construction of the term Downloadable and is stuck with the consequences, even if the consequences are that the patent reads on no embodiments. In fact, however, the record reflects that although the parties stipulated to the construction of the term Downloadable, they did not share the same understanding of the term "executable," as used in that construction, a point that became clear during the summary judgment argument. By agreeing to the construction of the term Downloadable, Finjan did not acquiesce in the interpretation of the court's construction of "executable," which was that an "executable" file must be executable without any further processing, rather than being capable of execution after, for example, being reconstructed following its transmission in packetized form.

**\*12** Second, the specifications of the Downloadable patents suggest that it is not necessary for the claimed receiver to reconstruct the packets in order for the file to be considered an executable file. For example, the specification of the '494 patent discloses a mechanism for determining whether a "potential-Downloadable" is actually a Downloadable by examining whether it "more likely [than not] includes executable code." '494 patent, col. 19, line 64 through col. 20, line 12. The fact there is no actual determination of whether the file contains executable code, but instead merely a determination of whether the file "likely" contains such code, indicates that the analysis described in that passage could take place before the reconstruction of the packets into a file that can be executed. The specification of the '844 patent also notes that "programs and data may be received by and stored in the system in alternative ways." '844 patent, col. 7, ll. 31–33. That language further suggests that a system may transmit the Downloadable in packets if desired, and that the Downloadable would be "executable" even when it is transmitted in packetized form.

For those reasons, I would vacate the district court's grant of summary judgment of non-infringement with respect to the Downloadable patents and remand for further proceedings on that issue.

**All Citations**

--- F.4th ----, 2023 WL 6775035

**End of Document**                                            © 2023 Thomson Reuters. No claim to original U.S. Government Works.