Nos. 22-1421, -1573

IN THE
# United States Court of Appeals for the Federal Circuit

SONOS, INC.,

*Appellant,*

*v.*

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

GOOGLE LLC,

*Intervenor.*

---------------------------------------------------------

GOOGLE LLC,

*Appellant,*

*v.*

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

SONOS, INC.,

*Intervenor.*

On Appeal from the United States International
Trade Commission No. 337-TA-1191

## SONOS, INC.'S RESPONSE TO
## PETITION FOR REHEARING EN BANC

George I. Lee
Sean M. Sullivan
J. Dan Smith
LEE SULLIVAN SHEA &
  SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL  60661

E. Joshua Rosenkranz
Edmund Hirschfeld
Alexandra Bursak
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street,
New York, NY  10019
(212) 506-5000
jrosenkranz@orrick.com

*Additional Counsel Listed on Inside Cover*

Robbie Manhas
Abigail Colella
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC  20037

Clement S. Roberts
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105

Bas de Blank
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Alyssa M. Caridis
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
355 S. Grand Avenue
Suite 2700
Los Angeles, CA  90071

*Counsel for Appellant-Intervenor Sonos, Inc.*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 22-1421, -1573 |
| **Short Case Caption** | Sonos, Inc. v. International Trade Commission |
| **Filing Party/Entity** | Sonos, Inc. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/08/2024

Signature:  /s/ E. Joshua Rosenkranz

Name:  E. Joshua Rosenkranz

i

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Sonos, Inc. | | BlackRock Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

ii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Lillian J. Mao | Shane D. Anderson | Margaret Abernathy |
| Michael P. Boyea | Jae Y. Pak | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑    Yes (file separate notice; see below)    ☐    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ..................................................................... v

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 2

REASONS FOR DENYING THE PETITION ........................................... 4

    I.    *Loper Bright* Does Not Provide A Basis To Reconsider *Suprema.* ................................................................... 4

        A.    *Suprema* remains good law because of statutory *stare decisis.* ................................................... 5

        B.    Even without deference, *Suprema* adopted Section 337's best reading. ........................... 8

    II.    This Case Is the Wrong Vehicle For Reconsidering *Suprema.* ................................................................. 15

CONCLUSION .................................................................................. 20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Cathedral Candle Co. v. ITC,*
 400 F.3d 1352 (Fed. Cir. 2005) ............................................................. 14

*Certain Inclined-Field Acceleration Tubes,*
 Inv. No. 337-TA-67, Comm'n Op., 0080 WL 594319 (Dec.
 29, 1980) ............................................................................................. 12

*Certain Molded-in Sandwich Panel Inserts & Methods for
 Their Installation,*
 Inv. No. 337-TA-99, Comm'n Op., 1982 WL 61887 (Apr. 9,
 1982) ................................................................................................... 12

*Certain Surveying Devices,*
 Inv. No. 337-TA-68, Comm'n Op., 0080 WL 594364 (July
 7, 1980) ............................................................................................... 12

*Enzo Biochem, Inc. v. Gen-Probe Inc.,*
 323 F.3d 956 (Fed. Cir. 2002) .............................................................. 16

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
 535 U.S. 722 (2002) ............................................................................... 7

*Halliburton Co. v. Erica P. John Fund, Inc.,*
 573 U.S. 258 (2014) ............................................................................... 5

*John R. Sand & Gravel Co. v. United States,*
 552 U.S. 130 (2008) ............................................................................... 7

*Kimble v. Marvel Ent., LLC,*
 576 U.S. 446 (2015) ............................................................................... 6

*Loper Bright Enters. v. Raimondo,*
 144 S. Ct. 2244 (2024) ........................................................ 1, 5, 6, 8, 14, 16

*Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,*
 793 F.2d 1279 (Fed. Cir. 1986) ............................................................ 10

*Moleculon Rsch. Corp. v. CBS, Inc.*,
  793 F.2d 1261 (Fed. Cir. 1986) ........................................................ 10

*Oklahoma v. U.S. Dep't of Health & Hum. Servs.*,
  No. 24-6063, 2024 WL 3405590 (10th Cir. July 15, 2024) ................. 6

*Payne v. Tennessee*,
  501 U.S. 808 (1991) .......................................................................... 7

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
  719 F.3d 1305 (Fed. Cir. 2013) ........................................................ 7

*Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*,
  754 F.2d 345 (Fed. Cir. 1985) ........................................................ 10

*Suprema, Inc. v. ITC*,
  796 F.3d 1338 (Fed. Cir. 2015) ..................... 1, 8, 9, 10, 11, 12, 13, 15

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012) ...................................................... 12

*United States v. Am. Trucking Ass'ns*,
  310 U.S. 534 (1940) ........................................................................ 14

*Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*,
  887 F.3d 1117 (Fed. Cir. 2018) ...................................................... 12

*Water Techs. Corp. v. Calco, Ltd.*,
  850 F.2d 660 (Fed. Cir. 1988) ........................................................ 10

*Young Eng'rs Inc. v. ITC*,
  721 F.2d 1305 (Fed. Cir. 1983) ...................................................... 12

**Statutes**

19 U.S.C. § 1335 ................................................................................ 8

19 U.S.C. § 1337(a)(1) ........................................................................ 9

19 U.S.C. § 1337(a)(1)(B) .................................................................... 9

28 U.S.C. § 1659(a) ............................................................................ 2

35 U.S.C. § 271 ...................................................................... 9, 13

35 U.S.C. § 271(a) .................................................................. 11

Omnibus Trade and Competitiveness Act of 1988, Pub. L.
   No. 100-418, 102 Stat. 1107 .............................................. 13

Tariff Act of 1930, Pub. L. No. 71-361, 46 Stat. 590 .............................. 12

## Other Authorities

*Causes of Action Under Section 337*, USITC GC-G-243, 1983
   WL 206913 (Sept. 30, 1983) ............................................. 13

H.R. Rep. No. 100-40, pt. 1 (1987) ........................................ 14

# INTRODUCTION

Google urges this Court to reconsider its en banc decision in *Suprema, Inc. v. ITC*, 796 F.3d 1338 (Fed. Cir. 2015), just because that decision invoked *Chevron*, as this Court has done with scores of statutory provisions over the past half century.  *Chevron*'s demise in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), is no basis to reconsider all those cases.  As the Supreme Court recognized, such decisions remain protected by statutory *stare decisis*—a doctrine Google does not even try to satisfy—and *Suprema* is especially protected, as it is an en banc decision continuing a decades-old practice that Congress has declined to change.  Regardless, this Court need not reconsider *Suprema* because it reached the right statutory construction.

Even if this Court were inclined to reconsider *Suprema*, there is no reason to rush to do it here, and good reason not to.  This case is already largely moot:  All but two asserted patents have expired, and infringement of only one rests on *Suprema*.  Meanwhile, wholesale mootness will soon arrive:  There is a significant chance that the solely relevant patent will become moot before this Court has an opportunity to decide the case en banc, as that patent expires in 10 months, and

1

imminent developments in district court may lead Sonos to stipulate to non-enforcement of the exclusion order with respect to that patent anyway.  This Court should wait to review a panel opinion that is informed by this Court's development of the *Loper Bright* framework, and, if appropriate, revisit Section 337's construction in a case where the *Suprema* issue matters and is sure to stay alive.

## BACKGROUND

On January 7, 2020, Sonos filed a complaint in the International Trade Commission based on Google's infringement of five Sonos patents related to smart speakers: U.S. Patent Nos. 8,588,949, 9,195,258, 9,219,959, 10,209,953, and 10,439,896.  Appx387, Appx396-450.  The complaint sought the Commission's only remedy—exclusion of Google's infringing products under Section 337.  *Id.*  Simultaneously, Sonos filed a district-court suit seeking damages for the same infringement.  *See generally Sonos, Inc. v. Google LLC*, No. 2:20-cv-00169 (C.D. Cal.).  The district court promptly stayed that suit pending resolution of the Commission proceeding as required by 28 U.S.C. § 1659(a).  That was more than four and a half years ago.  Commission remedies are

supposed to be quick.  But the COVID-19 pandemic caused extensive delays, as did this appeal.

The Commission's Final Determination ruled that all five of Sonos's patents are valid, and that Google's original products infringed across the board and must be excluded.  Appx23.  But the Commission found that minor tweaks could avoid infringement, so trivial redesigns continue to flood the U.S. market.  Appx23, Appx38.

As to *Suprema*, the Commission found that Google's original products infringed three of the five patents at importation because the products were manufactured with software enabling the claimed functionality—which is all the claims require.  Appx17-21, Appx170-173 (discussing the '959, '258, and '953 patents).  For the remaining two patents—the '896 and '949—the Commission relied solely on the theory that Google induced infringement after importation by encouraging users to install the Google Home app.  Appx197-199, Appx228-229.

This Court fully affirmed the Commission's decision.  Google sought rehearing on the *Suprema* issue, in anticipation of *Chevron*'s demise, shortly before the Supreme Court issued *Loper Bright*.

This case is now a husk of its former self.  Three patents—the '949, '258, and '953—have expired since Sonos filed its complaint in January 2020, and Google concedes that this appeal is moot as to them all.  Pet. 5, 6 n.2.  Of the two remaining patents, only the '896 patent's infringement theory turns on Google's post-importation conduct and therefore implicates *Suprema*.  The '896 patent will also soon expire, on June 6, 2025 (a mere 10 months from now).  *See* Appx10156-10157. Meanwhile, Sonos derives no benefit from the exclusion order on that patent because Google imports its redesign with no noticeable change in function.

In the stayed district-court action, Sonos intends to file a motion to proceed with trial on the three expired patents.

## REASONS FOR DENYING THE PETITION

### I. *Loper Bright* Does Not Provide A Basis To Reconsider *Suprema*.

This Court should deny Google's petition because it rests on a flawed syllogism: that just "[b]ecause *Chevron* is no longer good law," "*Suprema* is no longer viable."  Google 28(j) Ltr. 1-2; *see, e.g.*, Pet. 9. That syllogism makes two unjustified leaps.  First, Google ignores that *Suprema*'s result is protected by statutory *stare decisis*.  § I.A.  Second,

even to the extent the Commission is owed no deference, *Suprema* adopted Section 337's best reading.  § I.B.

### A. *Suprema* remains good law because of statutory *stare decisis.*

This Court has cited *Chevron* over 500 times in the past 40 years, deferring to agency interpretations of scores of statutory provisions.  By Google's analysis, this Court must go en banc to reconsider every case that deferred under *Chevron.*

Google is wrong.  The Supreme Court explicitly stated in *Loper Bright* that "we do not call into question prior cases that relied on the *Chevron* framework."  144 S. Ct. at 2273.  The Court emphasized that precedents are still subject to "statutory *stare decisis,*" which prohibits courts from overruling their own statutory interpretations without a "'special justification.'"  *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014)).  The Court explained:

> Mere reliance on *Chevron* cannot constitute a "'special justification'" for overruling [a prior] holding, because to say a precedent relied on *Chevron* is, at best, "just an argument that the precedent was wrongly decided." … That is not enough to justify overruling a statutory precedent.

*Id.* (citations omitted).  As this passage shows, the Court did not limit its assurance to holdings about "'specific agency actions,'" as Google

5

asserts.  Google 28(j) Ltr. 2 (quoting *Loper Bright*, 144 S. Ct. at 2273).

That is just one category of holdings unaffected by *Loper Bright*.

Statutory *stare decisis* and its "special justification" requirement are

fundamentally about insulating statutory interpretations, like

*Suprema*'s, from reconsideration.  *See Oklahoma v. U.S. Dep't of Health*

*& Hum. Servs.*, No. 24-6063, 2024 WL 3405590, at *11-12 & n.16 (10th

Cir. July 15, 2024) (applying *Loper Bright* to treat as good law *Chevron*-

reliant precedent holding that "HHS could enact requirements on

counseling and referrals" for Title X funding).

Google says that *Suprema*'s interpretation was incorrect.  Pet. 10.

We refute that below.  But what matters for present purposes is that

"'wrong on the merits'-type arguments" have never been enough to

overrule a precedent—especially a statutory precedent.  *Kimble v.*

*Marvel Ent., LLC*, 576 U.S. 446, 462 (2015).  The "special justification"

requirement derives from the recognition that "[r]especting *stare*

*decisis* means sticking to some wrong decisions."  *Id.* at 455.  "The

doctrine rests on the idea, as Justice Brandeis famously wrote, that it is

usually 'more important that the applicable rule of law be settled than

that it be settled right.'"  *Id.*

Statutory precedents are especially durable because "'Congress remains free to alter what [the courts] have done.'" *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1317 (Fed. Cir. 2013) (quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008)). The very least Google must show is that *Suprema* was so fundamentally wrong from inception, so unworkable in experience, and so problematic that it is entitled to no respect. Google does not even try to do so.

If anything, *Suprema* is shielded by statutory *stare decisis* of exceptional heft for several reasons. First, *stare decisis* from an en banc decision is especially "weighty." *Robert Bosch,* 719 F.3d at 1316. Second, Congress has declined to change that interpretation, despite having ample opportunity to do so. As discussed below, § I.B., since 1916, the Commission has exercised the authority *Suprema* recognized, and the Commission and this Court have reaffirmed that authority ever since Congress enacted Section 337's current language. Third, *stare decisis* is at its "acme" for precedent involving "property … rights." *Payne v. Tennessee*, 501 U.S. 808, 828 (1991). "[C]ourts must be cautious before adopting changes that disrupt the settled expectations of the inventing community." *Festo Corp. v. Shoketsu Kinzoku Kogyo*

7

*Kabushiki Co.*, 535 U.S. 722, 739 (2002).  Sonos and other innovators and businesses have made countless investments and decisions in reliance of the Commission's longstanding authority—exercised consistently for decades before *Suprema,* and definitively upheld by that en banc precedent—to block inducement of post-importation infringement.  *See Suprema*, 796 F.3d at 1350-52; *infra* 11-14 & n.1. Numerous Commission cases, like this one, have been pending for years—with damages remedies stayed—based on the settled expectation of an exclusion order that would cover any infringement. *Loper Bright* supplies no license to upend this firmly rooted legal landscape.

### B. Even without deference, *Suprema* adopted Section 337's best reading.

Regardless of statutory *stare decisis*, *Loper Bright* does not warrant revisiting *Suprema.*  To start, *Suprema*'s result is justified by non-*Chevron* deference to the Commission that *Loper Bright* preserved. *See Loper Bright*, 144 S. Ct. at 2262-63, 2273 (retaining *Skidmore*-type deference and agency discretion to fill up a statutory scheme's details and regulate under certain statutory conditions); *see also, e.g.*, 19 U.S.C. § 1335 (Commission's broad authority).  But even without that

deference, this Court should not revisit *Suprema* because it upheld the right statutory interpretation.

Section 337 provides:

> (a)(1) … [T]he following are unlawful, and when found by the Commission to exist, shall be dealt with … as provided in this section:
> …
>> (B) The importation into the United States, the sale for importation … by the owner, importer, or consignee, of *articles that*—
>>> (i) *infringe* a valid and enforceable United States patent
>>> ….

19 U.S.C. § 1337(a)(1), (a)(1)(B).  Much of what this Court said in *Suprema* shows that the Commission's interpretation was correct.

**1.**  *Suprema* correctly points out that the word "infringe" invokes "the statutory provision defining patent infringement."  796 F.3d at 1346.  "The word 'infringe' does not narrow Section 337's scope to any particular subsections of § 271," which "encompasses both direct and indirect infringement, including infringement by importation that induces direct infringement."  *Id.*  Nothing in the phrase "articles that infringe" compels the conclusion that Congress intended to carve out entire categories of infringement.  "To the contrary, various forms of shorthand references to devices that infringe have often been used

without such narrowed meaning." *Id.* at 1347 & n.4 (citing numerous examples); *see, e.g.*, *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (referring to whether "resins" infringed as a matter of inducement); *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1283 (Fed. Cir. 1986) (same for "coils"); *Moleculon Rsch. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (same for "pocket cubes").

*Suprema* also rebutted the argument that "the present-tense use of the verb 'infringe' … exclude[s] inducement of post-importation infringement because the acts that complete infringement have not all taken place at the time of importation." *Id.* at 1347. This Court reasoned that the "present-tense language is readily susceptible to being read as satisfied by the indirect infringer's own acts, including importation that is part of inducement." *Id.* at 1348 (collecting cases). That view finds support in this Court's holding (years before Congress adopted Section 337's current language) that inducement "[l]iability [arises] *as of the time the [inducing] acts were committed*, not at some future date determined by the acts of others." *Standard Oil Co. v.*

*Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348 (Fed. Cir. 1985) (emphasis in original).

*Suprema* also noted that the alternative reading "would have produced absurd results" under the "version of § 271(a)" in place when the current language was enacted. 796 F.3d at 1348. At that point (pre-1994), that section "did not define importing a patented invention" as "an infringing act," but "only … making, using, and selling, and those actions had to occur in the United States." *Id.* "If Congress meant to forbid the Commission from looking past the time of importation … , Section 337 would not have reached even garden-variety direct infringement." *Id.* As this Court said, "[w]e cannot attribute that result to Congress." *Id.*

**2.** *Suprema* also pointed out that the statutory history supported its reading: In enacting Section 337's current language in 1988, "Congress acted against a backdrop of consistent agency and judicial interpretation emphasizing the breadth of the Commission's authority." 796 F.3d at 1351 (collecting authorities; citation omitted).

Section 337 originally prohibited "unfair methods of competition and unfair acts in the importation of articles into the United States …

11

the effect or tendency of which is to destroy or substantially injure an industry." Tariff Act of 1930, Pub. L. No. 71-361, § 337, 46 Stat. 590, 703-04. As this Court observed, the Commission's "consistent interpretation" was to cover inducement of post-importation infringement. 796 F.3d at 1351. And this Court had condoned that approach. *Id.* (citing *Young Eng'rs Inc. v. ITC*, 721 F.2d 1305 (Fed. Cir. 1983)). Thus, *Suprema* itself contradicts Google's assertion that "there was no such practice." Pet. 12.[1]

---

[1] Contrary to Google's assertion (Pet. 12), that practice included instances where the Commission made no finding regarding substantial non-infringing use. *See, e.g.*, *Certain Inclined-Field Acceleration Tubes*, Inv. No. 337-TA-67, Comm'n Op., 0080 WL 594319, at *7-8 (Dec. 29, 1980) (finding inducement as to claims not directly infringed when tubes were imported based on later "incorporat[ion] [of] the tubes into infringing accelerator systems" without making any finding regarding substantial noninfringing use); *Certain Surveying Devices*, Inv. No. 337-TA-68, Comm'n Op., 0080 WL 594364, at *7-10 (July 7, 1980) (finding inducement when device "used with a plumb bob" without making any finding regarding substantial non-infringing use). Indeed, Google's suggestion that the Commission's authority to find inducement must be constrained to where an article has no substantial non-infringing use defies blackletter patent law: "[T]he existence of a substantial non-infringing use does not preclude a finding of inducement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012); *accord Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1133 (Fed. Cir. 2018) (substantial non-infringing use is only a restriction as to contribution); *Certain Molded-in Sandwich Panel Inserts & Methods for Their Installation*, Inv. No. 337-TA-99, Comm'n Op., 1982 WL

Against this unbroken history, "[t]here is no indication that Congress, in 1988, meant to contract the Commission's authority regarding patent infringement.  To the contrary, Congress said it was expanding Commission authority." *Suprema*, 796 F.3d at 1351. Specifically, in a statutory subsection titled "PURPOSE," Congress declared that the aim of the amendment introducing the relevant statutory language was "to make [Section 337] a more effective remedy for the protection of United States intellectual property rights." Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1341(b), 102 Stat. 1107, 1211-12.

Google is, thus, simply wrong that "[n]othing in the legislative history suggests that Congress intended to grant the Commission authority to address all violations of Section 271." Pet. 12.  Bolstering the Commission's broad exercise of authority—which already reached the circumstances here—Congress explained that the amendment's "fundamental purpose" was to "strengthen the effectiveness of section

---

61887, at *5 (Apr. 9, 1982) (reciting the restriction only as to contribution); *Causes of Action Under Section 337*, USITC GC-G-243, 1983 WL 206913, at *2 (Sept. 30, 1983) (same).

337" against the "importation of articles which infringe U.S. intellectual property rights." H.R. Rep. No. 100-40, pt. 1, at 155 (1987).

If Congress had intended to so extensively curtail the Commission's authority, Congress would have said so explicitly, not left the curtailment up to inference from subtle clues like verb tense. *See United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 550 (1940), *cited with approval in Loper Bright*, 144 S. Ct. at 2262, 2269.

That was how the Commission understood the 1988 amendment at the time, which is salient because, even in a post-*Chevron* regime, "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Loper Bright*, 144 S. Ct. at 2262; *see, e.g.*, *Cathedral Candle Co. v. ITC*, 400 F.3d 1352, 1365-67 (Fed. Cir. 2005) (adopting the Commission's interpretation of a statute based on *Skidmore* deference when *Chevron* deference did not apply, relying in part on the interpretation's timing and consistency).

**3.** *Suprema* also explained that the narrow reading of Section 337 that Google presses would not achieve Congress's evident objective. It would "weaken[] the Commission's overall ability to prevent unfair

14

trade acts involving infringement of a U.S. patent.…  [T]he practical consequence would be an open invitation to foreign entities (which might for various reasons not be subject to a district court injunction) to circumvent Section 337 by importing articles in a state requiring post-importation combination or modification before direct infringement could be shown."  *Suprema*, 796 F.3d at 1352.  *Suprema* thus also rebuts Google's position that Congress would have been comfortable curtailing the Commission's power "because district courts remain available to enjoin and award damages for any inducement … or contribution."  Pet. 12-13.

## II.    This Case Is the Wrong Vehicle For Reconsidering *Suprema*.

Even if this Court wishes to reconsider *Suprema*, this case is the wrong vehicle for two reasons: (1) the absence of any panel opinion fleshing out the details of post-*Chevron* statutory interpretation; and (2) mootness.  As Google points out, Pet. 13-14, Commission investigations are increasingly popular, which will give this Court ample opportunity to decide the issue in the context of more suitable vehicles.

15

**1.** It is very rare that this Court decides an issue en banc without the benefit of a panel opinion—often multiple panel opinions—working through the legal intricacies. There is good reason not to do so here.

To start, *Loper Bright* is a paradigm shift. It raises many questions about how statutory interpretation should proceed post-*Chevron*, including how to apply areas of deference that the Supreme Court acknowledged remain. *See Loper Bright*, 144 S. Ct. at 2262-63, 2267, 2273. This Court would benefit from allowing panels to wrestle with those questions. And if *Suprema* requires reconsideration, this Court would especially benefit from panel analysis of Section 337's construction under evolving post-*Chevron* principles. Of course, only an en banc court can actually override an earlier precedential opinion. But giving panels the first at-bat will conserve court resources, avoid unnecessary en banc proceedings, and develop the law in an orderly fashion. *See, e.g.*, *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 976 (Fed. Cir. 2002) (Dyk, J., concurring in denial of rehearing en banc) (questions may "benefit from further percolation … before they are addressed by the full court").

16

**2.** Because of a combination of patent expiration and alternative bases of infringement, there is only one patent—the '896 patent—that even implicates post-importation infringement.  That one patent, too, is on the verge of expiration—only 10 months of life remain—and might well be moot well before this Court can resolve an en banc case.

Google concedes that this case is moot as to the three expired patents.  Pet. 5, 6 n.2.  But it wrongly suggests that infringement of both the '959 and '896 patents rests on *Suprema*.  Pet. 2-3, 5-6.  That assertion ignores the Commission's finding that Google's products infringed the '959 patent at importation, without any post-importation conduct—a finding that Google did not appeal and that the panel did not reverse.  Appx170-173; GBr.50-51; Add15-25.  The Commission explained that the '959 claims do not require a device to actually enter a pairing with another device; they merely require a device "capable of carrying out" claimed functionality.  Appx171.  Google's products infringed because the requisite "capability is present at the time of importation by virtue of the software installed on the devices."  Appx171; *cf.* Appx19-20 (rejecting Google's challenge to infringement of the '258 and '953 patents for the same reason).  Because the

17

Commission's '959 infringement finding did not rely on post-importation conduct, en banc review of *Suprema* could only affect the '896 patent.

The '896 patent is set to expire in under 10 months—already a tight timeline to resolve an en banc proceeding.  And Sonos may moot the issue well before then for reasons related to the stayed damages case.  As explained above (at 4), Sonos derives no benefit from the exclusion order on the '896 patent and is eager to proceed with a damages action.  Sonos's upcoming motion on the three already-expired patents may begin progress toward the long-awaited damages trial.  *See supra* 4.  If, however, the district court declines to allow the case to proceed because this appeal remains alive, Sonos will stipulate to non-enforcement of the exclusion order with respect to the '896 patent.  That in turn will moot the *Suprema* issue altogether.

This is simply a matter of priorities.  Despite Sonos's best efforts to move quickly, this proceeding and the stayed district-court litigation are approaching their fifth birthday.  With most of the patents expired and the exclusion order providing little value, it is simply not worth investing in an expensive appeal to defend the exclusion order's remaining stub, if the price is further delay of the damages action.

18

***

Given *Suprema's* minimal practical importance to this case and the likelihood of mootness, nothing will be lost and much may be gained by withholding en banc review here.  If *Suprema* is ever to be reconsidered en banc, it should be in the context of a case where this Court can review a panel opinion informed by the development of the *Loper Bright* framework, the result matters to the outcome, and the case will stay alive long enough for the Court to resolve the issue.

# CONCLUSION

Rehearing should be denied.

August 8, 2024

George I. Lee
Sean M. Sullivan
J. Dan Smith
LEE SULLIVAN SHEA &
   SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661

Bas de Blank
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

Alyssa M. Caridis
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
355 S. Grand Avenue
Suite 2700
Los Angeles, CA 90071

Respectfully submitted,

*/s/ E. Joshua Rosenkranz*

E. Joshua Rosenkranz
Edmund Hirschfeld
Alexandra Bursak
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
51 West 52nd Street,
New York, NY 10019
(212) 506-5000
jrosenkranz@orrick.com

Robbie Manhas
Abigail Colella
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037

Clement S. Roberts
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105

*Counsel for Appellant-Intervenor Sonos, Inc.*

## CERTIFICATE OF COMPLIANCE

The response complies with the type-volume limitation of Fed. Cir. R. 35(e)(2) because this response contains 3591 words.

This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ E. Joshua Rosenkranz*
E. Joshua Rosenkranz
*Counsel for Sonos, Inc.*